UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| NICOLE NEWSOME-GOUDEAU | CIVIL ACTION NO. 17-909 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| STATE OF LOUISIANA, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

This matter arises from the custodial death by apparent suicide of Terrance Goudeau ("Goudeau"). Now pending before the Court is a motion for summary judgment filed by the sole remaining Defendant, Jerry Goodwin ("Goodwin"), pursuant to Federal Rule of Civil Procedure 56. [Record Document 72]. Plaintiff Nicole Newsome-Goudeau ("Plaintiff"), Goudeau's surviving spouse, has filed an opposition. [Record Document 74]. For the reasons discussed below, Goodwin's motion for summary judgment [Record Document 72] is hereby **GRANTED,** and all claims against Goodwin are **DISMISSED WITH PREJUDICE**.

**FACTUAL BACKGROUND**

Goudeau was found dead in his cell at David Wade Correctional Center ("DWCC") on June 12, 2016, after he hung himself. Record Document 20, ¶s 9 & 15. Goodwin was the warden of DWCC at the time of Goudeau's death. *Id.* at ¶ 11. Plaintiff alleges that Goudeau had been incarcerated at DWCC since February of 2016 and his "incarceration, medical and mental health history were well known" to DWCC employees. *Id.* at ¶ 12. According to Plaintiff, "it was well known to those at DWCC whether [Goudeau] had attempted and/or threatened to commit suicide on prior occasions." *Id.* at ¶ 14. Plaintiff

1

claims that Goodwin and other Defendants breached the standard of care for suicidal inmates by placing him in a cell containing "suicide hazards" because he had a "known propensity towards attempted suicide." *Id.* at ¶ 17.

As Goudeau's surviving spouse, Plaintiff brought state law tort claims and claims under 42 U.S.C. § 1983 against Goodwin, unnamed DWCC employees, an unnamed insurance company, the State of Louisiana, the Louisiana Department of Public Safety and Corrections ("DPSC"), DWCC, and the Coroner of Claiborne Parish, Dr. William Haynes ("Haynes"). *Id.* at ¶s 3, 20–24, & 27. Plaintiff also alleged an alternative theory that "foul play or criminal violation" caused Goudeau's death because his body was allegedly bruised when delivered to the undertaker. *Id.* at ¶ 30. Plaintiff filed suit in Louisiana's Second Judicial District Court. Record Document 1-1, p. 2. Haynes removed the action to this Court. Record Document 1, p. 1.

## **PROCEDURAL BACKGROUND**

Haynes is no longer a Defendant in this case after the Court granted his motion to dismiss. Record Documents 24 & 38. The Court also found that it lacked subject matter jurisdiction over the State of Louisiana, DPSC, and DWCC because those entities were entitled to sovereign immunity under the Eleventh Amendment. Record Document 41, p. 3. Those parties were severed and remanded to state court, pursuant to Federal Rule of Civil Procedure 21.[1] *Id.* at 4. In addition, the Court determined that a motion to dismiss filed by Goodwin should be granted in part and denied in part. *Id.* at 9. Plaintiff's complaint

---

[1] Rule 21 provides that the Court has the authority to sever any claim or party *sua sponte*. Fed. R. Civ. P. 21.

did not allege (1) that Goodwin participated in or directly caused Goudeau's death; (2) that Goodwin had subjective knowledge about any suicidal tendencies Goudeau may have had; or (3) that Goodwin was in any way connected to her theory that Goudeau's death resulted from foul play. *Id.* at 6 & 8. Thus, Goudeau's motion to dismiss was granted as to Plaintiff's § 1983 claims that Goodwin was deliberately indifferent in light of his subjective awareness of Goudeau's suicide risk and that Goodwin was liable if Goudeau's death was due to "foul play or criminal violation." *Id.* at 9. The motion was also granted as to claims against Goodwin in his official capacity. *Id.*

The Court observed that Plaintiff could establish a § 1983 supervisory liability claim against Goodwin by showing that he implemented a policy "so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Id.* at 6–7 (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (internal citations and quotation marks omitted)). The Court found that Plaintiff stated a claim against Goodwin for the creation of an inadequate suicide prevention policy and that Goodwin was only entitled to qualified immunity from such a claim if he adopted an adequate suicide prevention policy at DWCC, but that this determination could not be made at the motion to dismiss stage. *Id.* at 7–8. Thus, Goodwin's motion was denied as to Plaintiff's § 1983 claim that he established an inadequate suicide prevention policy. *Id.* at 9. The Court also declined to dismiss Plaintiff's state law tort claims because the motion did not seek dismissal of those claims. *Id.* at 8. Goodwin later filed the instant motion for summary judgment as to the remaining claims.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23. However, "if the movant bears the burden of proof on an issue, . . . he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the non-movant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S. H. Kress &*

*Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the non-movant is so "weak or tenuous" that it could not support a judgment in the non-movant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

## LAW AND ANALYSIS

### I. Section 1983 Claim

Title 42, United States Code, Section 1983 provides a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States against any person acting under color of state law. 42 U.S.C. § 1983. Section 1983 does not create substantive rights but provides remedies to the rights established in the United States Constitution and other federal laws. *See Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To assert a claim for damages under this statute, a plaintiff must demonstrate "(1) a deprivation of a right secured by federal law, (2) that occurred under color of state law, and (3) was caused by a state actor." *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004). Nonetheless, the doctrine of qualified immunity shields government

5

officials from liability for claims against them in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This protection exists to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability, . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). As such, the issue of whether qualified immunity applies should be resolved at the earliest possible stage in the litigation. *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). While qualified immunity is technically an affirmative defense, it is the plaintiff's burden to negate the defense once it has been raised. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The issue of qualified immunity requires the Court to make a two-part inquiry: (1) whether the facts alleged or shown by the plaintiff demonstrate a violation of a constitutional right, and (2) if a violation has been established, whether the official's actions were objectively reasonable in light of clearly established law at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A court may begin its analysis of qualified immunity with either prong. *Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014).

Because Plaintiff's claims arise out of events that occurred while Goudeau was incarcerated, the constitutional right at issue in this case derives from the Eighth Amendment, which "dictates that cruel and unusual punishment shall not be inflicted" upon prisoners. *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004). The Court must consider whether, viewing all facts in the light most favorable to Plaintiff, Goodwin's actions violated Goudeau's right to be free from cruel and unusual punishment. If Plaintiff establishes such a violation, the Court will then analyze whether the right was clearly established at the time of Goodwin's alleged misconduct.

### A. Applicable Law

In order to demonstrate that Goodwin is liable under § 1983, Plaintiff must establish the existence of an Eighth Amendment violation. "Though the 'Constitution does not mandate comfortable prisons,' 'prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . take reasonable measures to guarantee the safety of the inmates.'" *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations and internal quotation marks omitted)). In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983" because it "constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." 429 U.S. 97, 104–05 (1976) (internal citations and quotation marks omitted). A prison official acts with deliberate indifference when the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Thus, to prevail on an Eighth Amendment claim, a plaintiff must demonstrate (1) that "the alleged deprivation was objectively serious, exposing him to a substantial risk of serious harm and resulting in the denial of the minimal civilized measure of life's necessities" and (2) that the prison official "possessed a subjectively culpable state of mind in that he exhibited deliberate indifference to serious medical needs." *Arenas*, 922 F.3d at 620 (internal citations and quotation marks omitted).[2]

As stated above, because Plaintiff did not allege that Goodwin participated in or directly caused Goudeau's death, he can only be liable as a supervisor. *See* Record Document 41, p. 6. To prevail on her § 1983 claim, Plaintiff must, in addition to the above, demonstrate that Goodwin is liable under § 1983 in his supervisory capacity. A prison official can be held liable in his supervisory capacity "even without overt personal participation in the offensive act if [he] implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304 (internal quotation marks omitted). As such, to

---

[2] In the Fifth Circuit, Eighth Amendment claims are categorized as either attacking the conditions of confinement or alleging an episodic act or omission. *Anderson v. Dallas Cty. Tex.*, 286 F. App'x 850, 857 (5th Cir. 2008) (per curiam). Claims such as Plaintiff's that arise from a single instance of inmate suicide are typically considered act or omission cases. *See Garza v. City of Donna*, 17:16-cv-00558, 2017 WL 6498392, at *16 (S.D. Tex. Dec. 15, 2017) (quoting *Hetchler v. Rockwall Cty., Tex.*, 3:08-cv-0551, 2009 WL 1160284, at *4 (N.D. Tex. Apr. 27, 2009) ("The reported cases in the Fifth Circuit uniformly hold that inmate suicides involve episodic act or omission claims.")). In an episodic act or omission claim, a plaintiff must also demonstrate deliberate indifference as required to establish an Eighth Amendment violation. *Garza v. City of Donna*, 922 F.3d 626, 634–35 (5th Cir. 2019).

show that Goodwin is liable under § 1983 as a supervisor, Plaintiff must demonstrate that Goodwin was deliberately indifferent, as required to establish an Eighth Amendment violation, in crafting an insufficient or inadequate suicide prevention policy that led to Goudeau's death and that the policy exposed Goudeau to a substantial risk of serious harm.

### B. Analysis

In applying the above law to the case at hand, the Court holds that Plaintiff's § 1983 claim against Goodwin cannot survive because Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Goodwin was deliberately indifferent in crafting DWCC's suicide prevention policy, meaning that Plaintiff cannot establish an Eighth Amendment violation nor can she establish supervisory liability under § 1983. The Court will first examine the issue of supervisory liability.

To begin, Plaintiff has admitted that Goudeau never exhibited any suicidal tendencies while housed at DWCC. In his statement of uncontested material facts, Goodwin states that "[t]here was no reason to suspect Goudeau might pose a danger to himself as he never exhibited any suicidal ideations, mental health problems or self-mutilation tendencies." Record Document 72-2, p. 1. In her opposition, rather than controverting Goodwin's factual statements, Plaintiff submits one blanket statement that Goudeau "tragically passed away" while incarcerated at DWCC. Record Document 74-1, p. 1. Plaintiff offers no proof of any kind—no medical records, prison records, or even affidavits—to refute Defendant's assertions. Pursuant to Local Rule 56.2, because Plaintiff failed to controvert Goodwin's statement on this point, it is deemed to be admitted. W.D.

La. R. 56.2. Therefore, the Court is bound to accept as fact that Goudeau never exhibited "any suicidal ideations, mental health problems or self-mutilation tendencies." Record Document 72-2, p. 1.

Even if Plaintiff had not made this factual admission, she has provided no evidence that Goodwin or anyone at DWCC knew Goudeau had suicidal tendencies. The record confirms that Goudeau received a mental health intake screening on January 21, 2016, and he denied having any current mental health symptoms, current suicidal ideation or behavior, or prior suicidal ideation or behavior. Record Document 58-2, p. 26. Goudeau was also evaluated by a mental health professional on February 15, 2016, and again on May 9, 2016. *Id.* at 23 & 25. Goudeau denied any mental health concerns and appeared to be acting normally on both occasions. *Id.* Although Plaintiff's complaint states that "it was well known to those at DWCC whether [Goudeau] had attempted and/or threatened to commit suicide on prior occasions," Plaintiff fails to support this conclusory statement with specific facts such as which individuals knew about these suicidal tendencies or how and when they received such knowledge. Record Document 20, ¶ 14. In order to show that Goodwin is liable, Plaintiff must demonstrate that DWCC's suicide prevention policy was constitutionally deficient by failing to prevent the suicide of an inmate who never exhibited outward signs of suicidal ideation. Unfortunately for Plaintiff, the case law surrounding the topic of inmate suicide indicates otherwise.

Under Fifth Circuit precedent, it is well-established that the duty to keep inmates safe includes a responsibility on the part of prison officials to "provide adequate protection against a prisoner's known suicidal impulses." *Anderson v. Dallas Cty. Tex.*, 286 F. App'x

850, 857 (5th Cir. 2008) (per curiam) (citing *Evans v. City of Marlin, Tex.*, 986 F.2d 104, 107 (5th Cir. 1993)). The Fifth Circuit has also held that a municipality should train its officers to recognize and not ignore "obvious medical needs of detainees with known, demonstrable, and serious mental disorders," but is not required to train its officers to screen each detainee "so that the officers will unerringly detect suicidal tendencies." *Burns v. City of Galveston, Tex.*, 905 F.2d 100, 104 (5th Cir. 1990). Expounding on this holding, the Fifth Circuit stated in *Evans* that, absent the right to a complete psychological examination, "the failure to train custodial officials in screening procedures to detect *latent* suicidal tendencies does not rise to the level of a constitutional violation." 986 F.2d at 107–08 (emphasis in original). To summarize, "[i]n the absence of manifest signs of suicidal tendencies, a city may not be held liable for a detainee's suicide in a § 1983 suit based on a failure to train." *Whitt v. Stephens Cty.*, 529 F.3d 278, 284 (5th Cir. 2008) (internal quotation marks omitted).[3] In light of this case law, Plaintiff cannot show that the suicide prevention policy at DWCC was deficient because DWCC employees failed to recognize that Goudeau was a suicide risk without any manifest signs to that effect.[4]

---

[3] Although *Burns*, *Evans*, and *Whitt* involve the rights of pretrial detainees that stem from the Fourteenth Amendment, the Fifth Circuit has ruled that there is no reason the duty of prison officials to provide medical care should vary depending on whether that duty is created by the Fourteenth Amendment or the Eighth Amendment. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 648–49 (5th Cir. 1996) ("[D]espite the distinct constitutional sources of the rights of pretrial detainees and convicted inmates, state jail and prison officials owe the same duty to provide the same quantum of basic human needs and humane conditions of confinement to both groups."). Therefore, *Burns*, *Evans*, and *Whitt* apply to the instant case.

[4] The Court notes that the holdings in *Burns*, *Evans*, and *Whitt* are based on a municipality's liability under § 1983 for the failure to train its officers. Although Plaintiff's § 1983 claim in this matter is that Goodwin implemented an inadequate suicide prevention policy, these cases still apply. The failure of a municipality to "train officers in appropriate

Plaintiff has also failed to dispute the evidence presented by Goodwin showing that DWCC had an adequate suicide prevention policy in place at the time Goudeau died. This policy provided for an initial screening for suicide risk "at the time of admission by a mental health professional or by mental health trained personnel." Record Document 58-2, p. 13. A potential suicide risk may be identified by other direct care staff based on their "interactions with and observations of offenders," which will result in an additional screening of that inmate by the mental health department. *Id.* at 14. If an inmate is identified as in need of suicide watch, the inmate is observed constantly until it is determined whether he should be placed on "Standard" or "Extreme" watch. *Id.* When an inmate is placed on suicide watch by someone other than a mental health professional, the mental health department will be notified and the inmate assessed as soon as possible. *Id.* For all levels of suicide watch, the frequency of observation "will vary from continual observation to intervals of 15 minutes or less." *Id.* at 16. Each time a suicide watch is implemented or discontinued, a Mental Health Management Order is completed that describes which techniques should be used for the individual and specifies items permitted and not permitted in the inmate's cell. *Id.* at 15. The policy provides that all DWCC staff responsible for inmate supervision should be trained on an annual basis in the implementation of suicide prevention and intervention. *Id.* at 20–21. Finally, the suicide

---

procedures supports § 1983 liability 'only where the failure to train amounts to a deliberate indifference to the rights of persons with whom the [officers] come into contact.'" *Whitt*, 529 F.3d at 284 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). Thus, it would be inconsistent to hold that DWCC's suicide prevention policy was constitutionally deficient for failing to prevent the suicide of Goudeau, who never exhibited outward signs of suicidal ideation, when the Fifth Circuit has held that municipalities are not deliberately indifferent for failing to train their employees to detect latent suicidal tendencies.

prevention policy is reviewed annually. *Id.* at 20. Plaintiff has provided no conflicting evidence to show that DWCC's policy was deficient.

Despite the case law on this topic and the evidence presented by Goodwin, Plaintiff attempts to argue that Goodwin is liable under § 1983 even if no one at DWCC knew Goudeau was suicidal. Plaintiff alleges that DWCC personnel should have monitored Goudeau more closely because he was housed in isolation at the time of his death, which she asserts DWCC knew meant he was "at greater risk of self-harm and suicide." Record Document 74, p. 4. She cites to several websites in support of this argument.[5] One leads to a PowerPoint presentation created by the U.S. Marshals Service on the topic of suicide prevention training and another to a Bureau of Justice Statistics report. Record Document 74, pp. 3–4. Plaintiff cites these websites only for the statistics they provide, not for any recommendations for suicide prevention policies. Another link leads to a study entitled "Best Practices in Mental Health at Correctional Facilities," published by Cornell University. *Id.* at 4–5. Plaintiff appears to cite the entire study for the proposition that, in Plaintiff's words, "best practices require all inmates be monitored for possible suicide at all times." *Id.*

---

[5] The Court notes that Plaintiff attempted to cite several research studies but did not provide a link to those studies, attach them to her brief, or otherwise attempt to submit them to the Court. Record Document 74, pp. 3–5. Thus, the Court did not consider them in its ruling. From reviewing the titles of those studies, it appears that they focus on the impact that isolation has on inmate suicide. Statistics on that topic, even if the Court had access to them, are not sufficient to survive summary judgment because they do not demonstrate that the suicide prevention policy at DWCC was constitutionally deficient and caused a violation of Goudeau's rights.

Regardless of whether best practices require prisons to constantly supervise all inmates, Plaintiff's burden in this case is not to show that DWCC's suicide prevention policy failed to comply with "best practices" but to show that "the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304. Plaintiff has clearly failed to meet this burden. It is uncontested that Goudeau did not exhibit any outward signs that he was a suicide risk. Furthermore, the Fifth Circuit has made clear that prison officials are not constitutionally liable for failing to detect latent suicidal tendencies. *Evans*, 986 F.2d at 107–08. As such, it would be inconsistent to find that a suicide prevention policy was constitutionally deficient for failing to do the same. Finally, Goodwin has presented uncontroverted, detailed evidence showing the precautions DWCC took to prevent suicide. Again, Plaintiff has produced no evidence to refute the Defendant's assertions or to show that these precautions were inadequate. Therefore, Plaintiff cannot show that Goodwin is liable under § 1983 in his supervisory capacity for Goudeau's death.

Based on the above, the Court finds that Plaintiff has failed to demonstrate that Goodwin was deliberately indifferent in crafting an insufficient suicide prevention policy that led to Goudeau's death. *Arenas*, 922 F.3d at 620; *Thompkins*, 828 F.2d at 304. Deliberate indifference "is an extremely high standard to meet." *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Based on the evidence in the record and the relevant case law, no reasonable jury could find that Goodwin knew of and disregarded "an excessive risk to inmate health or safety" when he crafted DWCC's suicide prevention policy. *Farmer*, 511 U.S. at 837. Stated differently, nothing in the record shows that

Goodwin should have known that a constitutional violation was a "highly predictable consequence" of DWCC's suicide prevention policy. *Burge v. St. Tammany Parish*, 336 F.3d 363, 373 (5th Cir. 2003). Therefore, Plaintiff has not only failed to establish that Goodwin can be liable in his supervisory capacity, she has also failed to demonstrate an underlying constitutional violation, as required to succeed on a § 1983 claim. *Larpenter*, 369 F.3d at 482.[6] Goodwin's motion for summary judgment [Record Document 72] is **GRANTED** as to Plaintiff's § 1983 claim. That claim is hereby **DISMISSED WITH PREJUDICE.**

II. **State Law Claims**[7]

In addition to her § 1983 claim, Plaintiff alleges that Goudeau's death was the result of negligence. Record Document 20, ¶ 20. In Louisiana, negligence claims are governed by a duty-risk analysis under Louisiana Civil Code article 2315. *Chanthasalo v. Deshotel*, No. 2017-CA-0521 (La. App. 4 Cir. 12/27/17); 234 So. 3d 1103, 1107. To establish a claim for negligence, a plaintiff must establish five elements: duty, breach, cause-in-fact, scope of the duty/risk, and damages. *Id.* "If the plaintiff fails to prove any one element by a preponderance of the evidence, the defendant is not liable." *Perkins v. Entergy Corp.*, 00-1372, 001387, 00-1440 (La. 3/23/01); 782 So. 2d 606, 611.

---

[6] Demonstrating a constitutional violation is also the first prong of the qualified immunity analysis. *Saucier*, 533 U.S. at 201. Because Plaintiff has failed on the first prong of the qualified immunity analysis, the Court need not proceed to the next prong to determine whether the right was clearly established at the time of Goodwin's alleged misconduct.

[7] In the section of her opposition dedicated to her state law claims, Plaintiff states that the Court should either (1) deny the instant motion because "there is another pending matter making similar allegations challenging mental health procedures at [DWCC]" or (2) defer ruling on the motion for summary judgment until all related issues in the other case have been resolved. Record Document 74, p. 7. The Court disagrees. Each case must be judged on its own merits. This case deals solely with whether Goodwin can be held liable for Goudeau's death rather than the general conditions at DWCC.

15

In Louisiana, prison authorities owe a duty of reasonable care to protect inmates from harm. *Harper v. Goodwin*, 41,053 (La. App. 2 Cir. 5/17/06); 930 So. 2d 1160, 1163. However, in order for prison officials to have a duty to protect inmates from suicide, there must be evidence that they "either knew or should have known of an inmate's suicidal tendencies." *Leonard v. Torres*, 2016-1484 (La. App. 1 Cir. 9/26/17); --- So. 3d ----, 2017 WL 4301898, at *12; *Scott v. State*, 618 So. 2d 1053, 1058 (La. Ct. App. 1993); *Estate of Shelvin v. Neustrom*, 2015-63 (La. App. 3 Cir. 10/7/15); 197 So. 3d 707, 713. Thus, the duty of prison authorities does not extend to protecting inmates from unknown suicidal tendencies.

Plaintiff argues that "the fact that [Goudeau] was examined by mental health staff four times within the same number of months" undercuts Goodwin's argument that there was no reason to believe Goudeau was suicidal. Record Document 74, p. 6. However, this statement is wholly conclusory and unsupported by facts or evidence. As discussed previously, Plaintiff has produced no evidence that Goodwin, or anyone at DWCC, knew that Goudeau was at risk of committing suicide. As such, Goudeau's suicide "was neither foreseeable nor easily associated with any duty that was allegedly breached." *Leonard*, 2017 WL 4301898, at *12. Therefore, Plaintiff has not shown that Goodwin had a duty to prevent Goudeau from committing suicide and, thus, her negligence claim cannot survive summary judgment. Goodwin's motion for summary judgment [Record Document 72] is **GRANTED** as to Plaintiff's state law negligence claim. That claim is hereby **DISMISSED WITH PREJDUICE**.

Along with general negligence claims, Plaintiff's complaint asserts claims for wrongful death, survival, and loss of consortium. Record Document 20, ¶s 22–24. However, both a survival action and a wrongful death action require underlying fault. La. Civ. Code. Ann. arts. 2315.1 & 2315.2. Further, a loss of consortium claim is derivative of the primary victim's injury. *Allemand v. Discovery Homes, Inc.*, No. 2009 CA 1565 (La. App. 1 Cir. 5/28/10); 38 So. 3d 1183, 1187. In this case, the Court has determined that there is no genuine issue of material fact as to whether Goodwin committed any fault or caused Goudeau any injury. Therefore, Plaintiff is unable to establish the essential elements of those claims. The motion for summary judgment [Record Document 72] is **GRANTED** as to the wrongful death, survival, and loss of consortium claims, and they are hereby **DISMISSED WITH PREJUDICE**.

## CONCLUSION

For the reasons discussed above, Goodwin's motion for summary judgment [Record Document 72] is hereby **GRANTED**. All of Plaintiff's claims against Goodwin are **DISMISSED WITH PREJUDICE**. A judgment consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** this 22nd day of September, 2020.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE

17